Thomas C. Horne
Attorney General

Neil Singh, Bar No. 021327
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Neil.Singh@azag.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Erik Scott Maloney,<br><br>      Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.<br><br>      Defendants. | No. CV 13-314-PHX-RCB (BSB)<br><br>**DEFENDANTS RYAN AND LINDERMAN'S RESPONSE TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF (DOC. 16)** |

Defendants Linderman and Ryan hereby respond in opposition to Plaintiff's "Motion for a Temporary Restraining Order and/or Preliminary Injunction." (Doc. 16). This response is supported by the attached exhibits and the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff originally claimed that breakfast meals during Ramadan would not be served on time. He has now changed his theory to vaguely argue that Ramadan meals do not contain enough nutrition. His motion fails to meet the standards for temporary or preliminary injunctive relief and should be denied.

**I.     Factual Background**

Plaintiff is an inmate incarcerated at the Arizona State Prison Complex in Florence, who belongs to the Islamic faith. Ramadan is a holy month in Islam, during which observant Muslims engage in fasting from sunrise to sunset. Although Plaintiff has not described in detail the particular importance of Ramadan's customs to his faith, a decision cited in his brief contains a helpful description from the testimony of an Imam:

> Islam emphasizes discipline, and it's through discipline and through adherence to these practices that you would grow spiritually. This growth that's gained through the practice itself is… something similar to the word zakat, which is charity, the third pillar of Islam. And basically, when you give in charity, you gain in purification of your soul. When you practice- when you pray, when you fast, when you do all the other good deeds that you're required to do, that's when you get spiritual growth and purification.
>
> If… somebody practices fasting, they would get a blessing from God. And through the practice of that self-discipline, they would get purification as well.

*Makin v Colorado Dep't of Corrections*, 183 F.3d 1205, 1212 (10th Cir. 1999) (quoting testimony of witness).

Defendants do not question the sincerity of Plaintiff's beliefs, and placed Plaintiff on ADC's participation list for Ramadan in both 2012 and 2013. (*Exhibit 1*, Declaration of Michael Linderman.) Nor do Defendants engage in any practice that conflicts with Ramadan's requirements. To aid inmates in complying with its fasting aspects this year, ADC provides a "breakfast mega-sack" meal on the evening before breakfast would ordinarily be served. (*Exhibit 2*, Declaration of Angelo Daniels.) During the Ramadan period, this mega-sack's caloric content is increased relative to what non-Ramadan inmates receive for breakfast, as is the caloric content of Muslim inmates' dinner meals. (*Id., Exhibit 3*, Letter from Trinity Services.) Through this method, inmates are free to eat their breakfast meal at any time prior to sunrise that they wish, and their dinner meal at any time after sunset. In addition, despite skipping their lunch meals as Ramadan calls for, inmates still receive the same caloric content as all other inmates: 2,900 calories per

day. (Exhibit 3.) The daily caloric recommendation of the U.S. Department of Agriculture for individuals in Plaintiff's age group is 2,600 calories for moderately active males and 3,000 calories for active males. (*Exhibit 4*, U.S.D.A. Data Sheet[1].) In sum, then, Plaintiff receives his meals during time frames that allow full compliance with Ramadan, the nutritional value of those meals is the equivalent of meals provided to all other inmates, and Plaintiff is not deprived of nutrition.

## II. Plaintiff's Contentions

Plaintiff originally filed a complaint and motion that cited to the timing of meals during Ramadan in 2012 as the basis for believing that meals in 2013 would not be served in a timely fashion. Upon learning that this was an unsupportable argument, he amended his complaint and is now alleging that ADC's provision of Ramadan meals deprives him of nutrition. Setting aside the irony of this argument in light of the importance of fasting and sacrifice as part of the Ramadan tradition, he openly acknowledges receiving a "mega sack" starting on July 8, 2013, the first day of Ramadan. Plaintiff's own characterization of ADC's Ramadan meal policy is as follows:

> … Muslim practitioners would now be given a "mega sack" for breakfast each day of Ramadan, "so we can begin our fast at the appropriate time." [ADC Senior Chaplain Miser] explained that Muslim practitioners would "be given a lunch sack for dinner," Mon-Fri., to which we will be given a "mega sack," for breakfast, along with lunch sack. This will account for our meals Mon-Fri. While on Saturday and Sunday we will be given a hot meal for dinner and a "mega sack" for breakfast.

(Doc. 16, Pl.'s Second Motion for TRO at pg. 4.)

---

[1] As a publication issued by the federal government on its website, Exhibit 4 is self-authenticating pursuant to Rule 902(5), and is also a public record pursuant to Rule 803(8), Fed. R. Evid. The publication was retrieved by undersigned counsel from the official website of the U.S. Department of Agriculture's Center for Nutrition Policy and Promotion, where the government has posted a report entitled, "Dietary Guidelines for Americans, 2010." The report may be downloaded in several parts at the following link: http://www.cnpp.usda.gov/DGAs2010-PolicyDocument.htm. Exhibit 4 is located within the Appendices to the report, under Appendix 6, at page 78.

1  Plaintiff's motion is frankly ambiguous as to what his theory is. He complains to
2 some degree about the nutritional value of his Ramadan meals, but he does so without
3 any evidence rebutting the ADC's position that the meals are nutritionally adequate.
4 While vaguely alluding to a deprivation of nutrition, the gist of his true complaint
5 appears to be that he is not receiving as many "hot meals" as he normally does before
6 and after Ramadan. Serving him "only two hot meals for dinner only on Saturdays and
7 Sundays," he submits, is to "encourage an 8th Amendment violation, and a 14th
8 Amendment equal protection violation." (*Id.*)
9  As to any remaining allegations in Plaintiff's motion, this Court has commented
10 that only Counts I, II and III of his complaint are currently at issue. All three of these
11 counts pertain strictly to the ADC's meal policy during Ramadan. Plaintiff has asserted
12 theories beyond the scope of those counts, such as his argument for "class certification"
13 on behalf of all Muslim inmates in ADC custody. Defendants understand that these
14 theories have not been authorized through the Court's judicial screening process and
15 therefore do not address them here. In the event Defendants misunderstood the Court's
16 intent on this point, they respectfully request leave for additional time to address the
17 issues at stake.

**III.  Plaintiff meets none of the standards for injunctive relief**

19  A plaintiff seeking a temporary restraining order must establish that he is likely to
20 succeed on the merits, that he is likely to suffer irreparable harm in the absence of
21 preliminary relief, that the balance of equities tips in his favor, and that an injunction is
22 in the public interest. *Am. Trucking Ass'n v City of L.A.*, 559 F.3d 1046, 1052 (9th Cir.
23 2009). "A preliminary injunction is appropriate when a plaintiff demonstrates ... that
24 serious questions going to the merits were raised and the balance of hardships tips
25 sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,
26 1134–35 (9th Cir. 2011). A TRO is an "extraordinary remedy" that may only be

4

1 awarded upon a "clear showing" that the plaintiff is entitled to such relief. *Winter v.*
2 *Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). As detailed below, Plaintiff's
3 motion fails to meet these standards and should be denied.

### A. Likelihood of success on the merits

Plaintiff has simply failed to state a viable constitutional theory in his amended complaint or renewed motion. To establish a violation of the Eighth Amendment, he must meet a two-part standard:

> First, an inmate must objectively show that he was deprived of something "sufficiently serious." A deprivation is sufficiently serious when the prison official's act or omission results "in the denial of the minimal civilized measure of life's necessities." The inmate must then make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety.

*Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009).

Furthermore, the Eighth Amendment does not entitle inmates to food that is "tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). In *LeMaire*, the meal in question was a solid loaf of blended foods called Nutraloaf, made by blending together, freezing, and then baking various foods into one edible loaf. The Ninth Circuit rejected the attempt to deem Nutraloaf as unconstitutionally cruel and unusual, because it found that Nutraloaf contained an "excess of nutritional requirements," and because the court found a lack of any constitutional requirement of taste or aesthetics. *Id*.

The meals Plaintiff complains of here, in contrast, consist *by his own admission* of: wheat bread, tortilla chips, slices of "T-ham," a bag of turkey, slices of cheese, hard-boiled eggs, cereal bars, tea bags, coffee packs, and packets of salad dressing. (Doc. 16 at pg. 5, ¶ 11.) There can be no reasonable factual basis on which to conclude that such food items fail the Nutraloaf standard of *LeMaire*. Plaintiff does not assert that their caloric content deprives him of nutrition when combined with his dinner meal, and the

1  exhibits to this brief amply document that their nutritional value is 2,900 calories per
2  day.  This is a far cry from anything "sufficiently serious" to arise to a constitutional
3  violation, much less anything demonstrating "deliberate indifference" to Plaintiff's
4  nutritional needs.
5      Plaintiff also makes a vague and unsupported reference to the Fourteenth
6  Amendment.  This argument fails on its face.  The only reason Muslim inmates are even
7  treated "differently" than other inmates during Ramadan is to accommodate their own
8  stated religious beliefs, and only if they opt to participate.  If Plaintiff wished to have the
9  same meal schedule as inmates not participating in Ramadan, he could easily request to
10 be removed from the participation list and his wish would be granted.  These facts do not
11 conflict with the constitutional guarantee of equal protection embodied in the Fourteenth
12 Amendment.

### B. Irreparable harm

14     Plaintiff has made no showing of irreparable harm in the absence of injunctive
15 relief.  To begin with, he has by his own admission held the belief that Defendants would
16 violate his perceived constitutional rights as to Ramadan since August of 2012, close to a
17 full year ago.  Yet he waited until only 27 days before Ramadan was to commence in
18 2013 before filing the instant action.  This belies any argument by him of the need for
19 immediate relief.  In any event, his motion refers only to a single fact as supporting the
20 "irreparable harm" factor:  an alleged "denial of adequate nutrition."  Defendants have
21 demonstrated in this brief, in part through Plaintiff's own admissions, that no such denial
22 is taking place and that Plaintiff is receiving adequate nutrition.

### C. Balance of equities

24     Plaintiff's demand, if granted, would require the ADC to provide hot meals to all
25 Muslim inmates throughout the State of Arizona between 3:30 and 4:00 a.m. (See Doc.
26 16 at pg. 9:23.)  The *status quo*, on the other hand, allows Plaintiff to eat a nutritional

6

breakfast meal at whatever time he chooses, followed by a nutritional meal at dinner. The balance of equities lies in Defendants' favor, not Plaintiff's.

### D. The public interest

Plaintiff states that the public interest would be served with injunctive relief in this case simply because "it is always in the public interest for prison officials to obey the law, especially the Constitution." (Doc. 16 at pg. 11.)  Yet the law and the Constitution impose only the obligation on Defendants to provide Plaintiff with nutritional meals that do not jeopardize his health.  Indeed, "the law" as stated in *LeMaire* actually discourages the provision of meals that might be, for lack of a better term, excessively delicious.  "Routine discomfort," the court observed, is "part of the penalty that criminal offenders pay for their offenses against society." *LeMaire*, 12 F.3d at 1456 (internal quotation marks omitted), *quoting Hudson v. McMillian*, 503 U.S. 1 (1992).  Any public interest factor arising from Plaintiff's own interest in participating in the Islamic customs of Ramadan are still being served, and respected, with the *status quo*.

### CONCLUSION

Defendants respectfully request that this Court deny Plaintiff's motion for a temporary restraining order, on grounds that Defendants are in compliance with their constitutional obligations.

RESPECTFULLY SUBMITTED this 22nd day of July, 2013.

    Thomas C. Horne
    Attorney General

    s/Neil Singh
    Neil Singh
    Assistant Attorney General
    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2013, I electronically transmitted the attached document to the Clerk of the Court using the ECF System.

This document and the Notice of Electronic Filing were served by mail on the same date on the following, who is not a registered participant of the CM/ECF System:

Erik S. Maloney, ADC #149284
ASPC – Florence – East Unit
P.O. Box 5000
Florence, AZ 85132-5000
*Plaintiff Pro Se*

s/ M. Beke
#3483991

8