**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Erik Scott Maloney, | ) |
| | ) |
| Plaintiff, | )   No. CV 13-00314-PHX-RCB(BSB) |
| | ) |
| vs. | )   O R D E R |
| | ) |
| Charles L. Ryan, et al., | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on plaintiff *pro se* Erik Scott Maloney's second amended civil rights complaint ("SAC") pursuant to 42 U.S.C. § 1983 (Doc. 17). On June 28, 2013, this court granted plaintiff leave to file that SAC.  Ord. (Doc. 13) at 6:17-19, ¶ (4).  As 28 U.S.C. § 1915A(a) requires, the following constitutes the court's screening of plaintiff's SAC.

In screening the original complaint (Doc. 1), the court dismissed without prejudice defendants Hetmer and Morris. Doc. 5 at 7:8, ¶ (3).  However, Charles L. Ryan, the Director of the Arizona Department of Corrections ("ADOC") and Mike

Linderman, ADOC's Administrator of Pastoral Activities, were ordered to answer counts I, II and III; and Wayne Mason, a Chaplain at the Florence complex where plaintiff is housed, was ordered to answer count II of that complaint. <u>Id.</u> at 7:9-10, ¶ (4). All three defendants have waived service of process as to the original complaint, though no answer or other response to that complaint have been filed. <u>See</u> Docs. 14, 15 and 20.

### I.  *Statutory Screening of Prisoner Complaints*

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

-2-

1  plausible on its face.'" Id. (quoting Bell Atlantic Corp. v.
2  Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible
3  "when the plaintiff pleads factual content that allows the
4  court to draw the reasonable inference that the defendant is
5  liable for the misconduct alleged." Id. "Determining whether
6  a complaint states a plausible claim for relief [is] . . . a
7  context-specific task that requires the reviewing court to
8  draw on its judicial experience and common sense." Id. at
9  679. Thus, although a plaintiff's specific factual
10 allegations may be consistent with a constitutional claim, a
11 court must assess whether there are other "more likely
12 explanations" for a defendant's conduct. Id. at 681.
13      But as the United States Court of Appeals for the Ninth
14 Circuit has instructed, courts must "continue to construe pro
15 se filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342
16 (9th Cir. 2010). A "complaint [filed by a pro se prisoner]
17 'must be held to less stringent standards than formal
18 pleadings drafted by lawyers.'" Id. (quoting Erickson v.
19 Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)). With these
20 principles firmly in mind, the court will review the SAC in
21 accordance with 28 U.S.C. § 1955A(a).

22 ***II.  Second Amended Complaint***

23      "[T]he general rule is that an amended complaint
24 supercedes the original complaint and renders it without
25 legal effect[.]" Lacey v. Maricopa Cnty., 693 F.3d 896, 927
26 (9th Cir. 2012) (en banc); see also Valadez-Lopez v. Chertoff,
27 656 F.3d 851, 857 (9th Cir. 2011) (quotation marks and
28 citations omitted) ("[I]t is well-established that an amended

- 3 -

complaint supersedes the original, the latter being treated thereafter as non-existent."). Thus, as previously explained, plaintiff's first amended complaint superseded his original complaint. See Ord. (Doc. 13) at 4:10 – 5:1. And now, the SAC supersedes the FAC so that the SAC becomes the operative complaint.

The first three counts in the SAC, all pertaining to Ramadan, are virtually identical to the first three counts in plaintiff's original complaint. The only differences are that in accordance with this court's screening order, Lance Hetmer and Stephen Morris are no longer named as defendants. Likewise, the SAC omits all allegations pertaining to them. Unlike the original complaint, however, the SAC includes a fourth count, alleging a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), against defendant Ryan. Basically, in that count the plaintiff alleges that defendant Ryan violated his religious exercise rights by implementing a policy which limits the amount of books, including religious books, available to him at any one time.

### *III.  Failure to State a Claim*

An inmate may bring a claim for violation of his religious exercise rights under RLUIPA. RLUIPA prohibits the government from imposing a substantial burden on the religious exercise of an institutionalized person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1) – (2). "While [RLUIPA]

adopts a 'compelling governmental interest' standard, [c]ontext matters in the application of that standard." Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1124 (9th Cir. 2013) (citing Cutter v. Wilkinson, 544 U.S. 709, 722–23, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005)) (other citations and internal quotations marks omitted).

An inmate claiming a RLUIPA violation "must allege facts plausibly showing that the challenged policy and the practices it engenders impose a substantial burden on the exercise of their religious beliefs." Id. at 1125 (citing Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005). RLUIPA does not define 'substantial burden[,]' but th[e] [Ninth Circuit] has held that 'a substantial burden on 'religious exercise must impose a significantly great restriction or onus upon such exercise." Id. at 1124-25 (quoting San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)).  In other words, "[t]he burden must be more than a mere inconvenience, and must prevent the plaintiff from engaging in [religious] conduct or having a religious experience[.]" Navajo Nation v. United States Forest Serv., 479 F.3d 1024, 1033 (9th Cir. 2007) (internal quotations and citations omitted), overruled on other grounds by 535 F.3d 1058 (9th Cir. 2008) (en banc).

"In the context of a prisoner's constitutional challenge to institutional policies, th[e] [Ninth Circuit] has held that a substantial burden occurs 'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an

adherent to modify his behavior and to violate his belief.'" <u>Hartmann</u>, 707 F.3d at 1125 (quoting <u>Warsoldier</u>, 418 F.3d at 995 (alteration in original) (quotation omitted)). Thus, "[p]risoners pursuing a RLUIPA claim must plead 'factual allegations showing their religious exercise was so burdened as to pressure them to abandon their beliefs.'" <u>Hill v. Wamble-Fisher</u>, 2013 WL 3223631, at *4 (D.Idaho March 25, 2013) (quoting <u>Hartmann</u>, 707 F.3d at 1125). The burden is then on the government to prove that the substantial burden on the inmate's religious practice both furthers a compelling governmental interest and is the least restrictive means of doing so. <u>Warsoldier</u>, 418 F.3d at 995.

"By its terms, RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." <u>Id.</u> (citation omitted). "Nonetheless, [a] prison's accommodation of religious observances should not be elevated over an institution's need to maintain order and safety." <u>Davis v. Powell</u>, 901 F.Supp.2d 1196, 1230 (S.D.Cal. 2012) (internal quotation marks and citations omitted).

In count IV, plaintiff alleges a violation of RLUIPA against defendant Ryan only. Plaintiff Maloney alleges that he is seeking to exercise his religion by engaging in "Dawwah[,]" which, among other things, "requires a Muslim practitioner to obtain knowledge of the religion of Islam and teach it to others by either proselytizing or . . .

studying with" them.  SAC (Doc. 17) at 13:4-6[1]; and 13:13-14. The plaintiff also alleges that as part of Dawwah, the Qur'an requires "one" to "back up his words/teaching with proof and evidence" in the form of "relivent [sic] text or book . . . to establish truthfulness and accuracy of the information." Id. at ¶ 3.

On January 30, 2013, defendant Ryan allegedly violated RLUIPA by rescinding a "policy . . . which allowed for an unlimited number of books provided they fit into a property box[,]" and implemented another policy limiting the number of books readily accessible to inmates.  Id. at 13:16-14:1 (emphasis added).  More specifically, defendant Ryan allegedly "set a limit on books at ten . . . to include religious books, and a limit on property boxes at Four[,] . . . forc[ing] Plaintiff to store the remainder of his books[.]"  Id. at 14:2-4.  To retrieve those stored books, plaintiff "must submit a written request to exchange books, then wait over a week until the property officer" provides the requested books.  Id. at 14:5-7.

Allegedly, this book "policy inhibits" the plaintiff in two ways.  Id. at 14:8 and 11.  First, it "inhibits [his] ability to teach" in that he does not "have the necessary proof and evidence on hand" to engage in Dawwah.  Id. at 14:8-9.  Second, allegedly, this policy "inhibits [plaintiff's] ability to retain the knowledge necessary to teach and

---

[1] The page number references to plaintiff's SAC, (Doc. 17), are to the page numbers generated by the District Court's electronic filing system, *not* the pre-printed page numbers on the complaint form or those hand-written by the plaintiff.

-7-

1  proselytize[.]" Id. at 14:11-12.

2      As the court construes count IV, under the current policy
3  up to four property boxes, each containing no more than ten
4  books, *i.e.*, a maximum of 40 books, religious or otherwise,
5  are readily available to an inmate on any given day. Other
6  books are kept in storage and available, although not
7  immediately, upon request. Plaintiff Maloney thus has at his
8  disposal on an ongoing basis, at the very least, ten religious
9  books, and perhaps up to as many as 40. Indeed, as plaintiff
10 alleges, presently, on any given day, "on average" he uses
11 "anywhere from 3 to 5 different books[.]" Id. at 14:13-14.

12     Count IV does not state a RLUIPA claim that is plausible
13 on its face because plaintiff Maloney has not pled an
14 essential element of such a claim. Namely, the plaintiff has
15 not sufficiently alleged that defendant Ryan's claimed policy
16 of limiting books, religious and otherwise, has substantially
17 burdened the exercise of his religion. Given the ready
18 availability of a number of plaintiff's religious books, and
19 the facility's retrieval process for others, plainly the
20 alleged book policy does not "impose a significantly great
21 restriction or onus upon [the] exercise" of plaintiff's
22 religion. See Hartmann, 707 F.3d at 1125 (internal quotation
23 marks and citation omitted); see also Callaway v. Frink, 2013
24 WL 1856524, at *5 (D.Mont. April 3, 2013), adopted, 2013 WL
25 1856471 (D.Mont. May 2, 2013) (citation omitted) (Plaintiff's
26 "desire for more Odinist books does not establish a RLUIPA
27 violation.") This is all the more so given the lack of
28 allegations explaining how or why having to wait over a week

-8-

to be provided with additional requested religious books has put "significant pressure" on plaintiff Maloney to "abandon [his] religious beliefs." See id. Additionally, there is nothing in the SAC from which it can be reasonably inferred that defendant Ryan's purported book policy is "oppressive[;]" or that it burdens plaintiff Maloney "to a 'significantly great extent,' so as to make the religious practice 'effectively impracticable.'" See Davis, 901 F.Supp. at 1230 (quoting San Jose Christian Coll., 360 F.3d at 1034-35). Rather, evidently plaintiff Maloney is "seek[ing] additional religious accommodations beyond those already provided by the prison to facilitate the religious exercise of [his] . . . faith." Hartmann, 707 F.3d at 1125. Failure to provide additional religious accommodations does not, however, amount to a substantial burden for RLUIPA purposes. See id. at 1125.

    Count IV does baldly allege that the book "policy has substantially burdened the religious exercise of Dawwah by putting pressure on plaintiff to modify his behavior substantially and to violate his beliefs." SAC (Doc. 17) at 14:15-17. This bald assertion does not overcome the pleading deficiencies just outlined, however, in that the court cannot reasonably infer from that allegation, unsupported by factual content, that defendant Ryan has violated RLUIPA. See Twombly, 550 U.S. at 570. Indeed, that broad, conclusory allegation is precisely the sort of "[t]hreadbare recital" of an element of a cause of action[,]" which the Supreme Court has found does not satisfy Rule 8's pleading requirements.

See Iqbal, 556 U.S. at 678.

In sum, because count IV does not allege a plausible RLUIPA claim against defendant Ryan, count IV will be dismissed.

### *IV. Claims for Which an Answer Will be Required*

As previously stated, counts I, II, and III are identical in all relevant ways to counts I, II, and III of the SAC. Therefore, for the reasons set forth in this court's prior screening order, defendants Ryan and Linderman must answer counts I, II, and III of the SAC and defendant Mason must answer count II of the SAC. See Doc. 5 at 3-6. Accordingly, the court will order service of the SAC (Doc. 17) upon defendants Ryan, Linderman and Mason.

### *V. Warnings*

#### *A. Address Changes*

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

#### *B. Copies*

Plaintiff must serve defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, plaintiff must submit an additional copy of every filing for use by the court. See LRCiv 5.4. Failure to comply may result in the filing being stricken

without further notice to plaintiff.

### *C. Possible Dismissal*

If plaintiff fails to timely comply with every provision of this Order, including these warnings, the court may dismiss this action without further notice. See <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

### *E. No Further Amendments Without Leave of Court*

Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend his pleading "once as a matter of course at any time before a responsive pleading is served . . ." Because plaintiff has now amended his complaint more than once, he may not file another amended complaint without first seeking permission from the court.

**IT IS ORDERED** as follows:

(1) Count IV of the Second Amended Complaint is **dismissed**.

(2) Defendant Ryan must answer counts I, II, and III of the Second Amended Complaint.

(3) Defendant Linderman must answer counts I, II, and III of the Second Amended Complaint.

(4) Defendant Mason must answer count II of the Second Amended Complaint.

(5) The Clerk of Court must send Plaintiff a service packet including the Second Amended Complaint (Doc. 17), this Order, and both summons and request for waiver forms for defendants Ryan, Linderman, and Mason.

. . .

(6) Plaintiff must complete[2] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a defendant within 120 days of the filing of the Second Amended Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(8) The United States Marshal must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to defendants must include a copy of this Order. The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a) personally serve copies of the Summons,

---

[2] If a Defendant is an officer or employee of the Arizona Department of Corrections, plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

    (10) A defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.

    (11) Defendants must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

    (12) Any answer or response must state the specific defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

    (13) This matter is referred to Magistrate Judge Bridget

1  S. Bade pursuant to Rules 72.1 and 72.2 of the Local Rules of
2  Civil Procedure for all pretrial proceedings as authorized
3  under 28 U.S.C. § 636(b)(1).
4      DATED this 22nd day of July, 2013.

_____
Robert C. Broomfield
Senior United States District Judge

12 Copies to counsel of record and plaintiff *pro se*