**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Erik Scott Maloney,                )
                                   )
              Plaintiff,           )     No. CV 13-00314-PHX-RCB(BSB)
                                   )
      vs.                          )          O R D E R
                                   )
Charles L. Ryan, *et al.*,         )
                                   )
              Defendants.          )
_____)

### *Introduction*

Plaintiff *pro se* Erik Scott Maloney is a Muslim[1] confined in the Arizona State Prison Complex-Florence in Florence, Arizona.  The Muslim holy month of Ramadan is observed by prayer and fasting during daylight hours.  Meals are taken

---

[1]
    The complaint contains no specific allegation that plaintiff Maloney is Muslim, although that is the obvious inference.  Plaintiff Maloney's supporting declarations explicitly state that he is a Muslim though. Maloney Decl'n (Doc. 8) at 3:26, ¶ 2; Maloney Decl'n (Doc. 16), at 3:26-27, ¶ 3.  The defendants do not disagree, Resp. (Doc. 22) at 2:3; and, in fact, as in 2012, plaintiff Maloney is on the participation list for Ramadan this year."  Mot., exh. I thereto (Doc. 22-1) Declaration of Michael Linderman (June 28, 2013) at 3:16-17, ¶ 6.

1  pre-dawn and after sunset.   The pre-dawn meal is referred to,

2  as Suhoor or Sahur, and the meal eaten after sunset as Iftar.

3  This year Ramadan began "on or about July 9, 2013" and

4  concludes on or about "August 7, 2013[,]" according to the

5  plaintiff.   Mot. (Doc. 16) at 1:24-25.[2]

6      In his second amended complaint ("SAC"), the plaintiff

7  alleges that just prior to Ramadan 2012, defendants created,

8  implemented or enforced a policy which inhibited the exercise

9  of his religion by knowingly setting the time for service of

10 breakfast at 5:00 a.m., after dawn, the religiously mandated

11 time for fasting had begun.   As a result of this alleged

12 policy, plaintiff Maloney claims that during Ramadan 2012, he

13 was not provided with a nutritionally adequate diet, and he

14 was not allowed to engage in the exercise of "Sahur."[3] SAC

15 (Doc. 17) at  11, ¶ 3.

16     Presently before the court is plaintiff's renewed motion

17 for a temporary restraining order "and/or" a preliminary

18 injunction.[4]   Mot. (Doc. 16) at 1:13.   Based upon "newly

19 developed facts[,]" and focusing solely upon Ramadan 2013,

20 plaintiff Maloney is seeking injunctive relief requiring the

21 defendants to provide him with two hot meals per day, to

---

22

23  [2]   All page number references are to the page numbers generated by
    the District Court's electronic filing system, *not* to those hand-written by
24  the plaintiff.

25  [3]   One of the seven necessary requirements to [a] proper Ramadan
    observance[]" is "Sahur[,]" defined as "the predawn meal[.]" <u>Muhammad v.
26  Klotz</u>, 36 F.Supp.2d 240, 241 n. 3 (E.D.Pa. 1999); <u>see also</u>  <u>Rice v. Curry</u>,
    2012 WL 4902829, at *1 n. 2 (N.D.Cal. Oct. 12, 2012) ("Suhoor meals are
    eaten by Muslims before sunrise during the month of Ramadan.")

27

28  [4]   Because the defendants have had notice of this motion it is more
    properly styled as one for  a preliminary injunction.  <u>Compare</u> Fed.R.Civ.P.
    65(a) <u>with</u> Fed.R.Civ.P. 65(b).

1   include fruits and vegetables. Declaration of Erik Scott
2   Maloney (July 9, 2013) (Doc. 16) at 3:24, ¶ 2; 6:1-5, ¶ 17.
3   Plaintiff also broadly seeks an injunction "requiring
4   defendants to allow for the religious exercise of Sahur. <u>Id.</u>
5   at 6:7-8, ¶ 18.  As plaintiff describes it, Sahur encompasses
6   being "given the opportunity to begin the days [sic] Fast
7   with the group prayer[.]" Mot. (Doc. 16) at 10:26-11:1.

8       Defendants Charles L. Ryan, the Director of the Arizona
9   Department of Corrections ("ADC"), and Michael Linderman,
10  ADC's Administrator of Pastoral Activities,[5] oppose this
11  motion arguing that they "are in compliance with their
12  constitutional obligations[]" because the plaintiff is
13  receiving nutritionally adequate meals during time frames
14  that allow for full compliance with Ramadan.  Resp. (Doc. 22)
15  at 7:18-19.  Defendants did not address plaintiff's motion as
16  it pertains to Sahur.

17              ***<u>Background</u>***[6]

18      Factually, plaintiff's motion differs markedly from his
19  SAC.  The primary, although not the only, difference is that
20  the SAC pertains to what transpired just prior to and during
21  Ramadan 2012, whereas the pending motion concerns Ramadan

22  ─────────────────

23      [5]    Counsel for defendants Ryan and Linderman executed a waiver of
    service of summons on behalf of defendant Mason on July 9, 2013 (Doc. 20),
24  but defendants' response does not include Mr. Mason.

25      [6]    "[C]onclusions reached at the preliminary injunction stage are
    subject to revision[.]" <u>Walters v. National Ass'n of Radiation Survivors</u>,
26  473 U.S. 305, 317, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985) (citing <u>University</u>
    <u>of Texas v. Camenisch</u>, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d
27  175 (1981)), superseded by statute on other grounds as stated in <u>Beamon v.</u>
    <u>Brown</u>, 125 F.3d 965 (6th Cir. 1997).  Therefore, "the findings of fact and
28  conclusions of law made by a court granting a preliminary injunction are
    not binding at trial on the merits[.]" <u>Camenisch</u>, 451 U.S. at 395, 101
    S.Ct. 1830.

1   2013.

2       Count I of the SAC alleges violations of plaintiff's

3   First Amendment rights based upon a policy supposedly

4   implemented just prior to Ramadan in July, 2012.  Allegedly,

5   that policy set the time for service of breakfast at 5:00

6   a.m., after dawn, the religiously mandated time for fasting

7   had begun.  As a result, plaintiff claims that during Ramadan

8   2012 he was forced to choose between eating breakfast or

9   violating the tenets of his religious beliefs.

10      That is not the situation this year, however.  Currently,

11  ADC is serving Muslim practitioners, such as plaintiff

12  Maloney, with "a breakfast sack meal during the evening meal

13  prior to breakfast, so inmates can eat at *whatever time they*

14  *choose* in the morning."  Declaration of Michael Linderman

15  (June 28, 2013) (Doc. 22-1) at 3:11-13, ¶ 5 (emphasis added).

16  Plaintiff Maloney readily acknowledges this, pointing out

17  that the defendants have "abandoned" their 2012 Ramadan

18  policy of providing breakfast at 5:00 a.m. Mot. (Doc. 16) at

19  8:1-3; see also Reply (Doc. 24) at 8:4 ("[P]laintiff now

20  receives Food inorder [sic] to start his Fast.")

21  Accordingly, as the court and the defendants are construing

22  this motion, plaintiff Maloney is not seeking any preliminary

23  injunctive relief as to count I.  In fact, he could not seek

24  such relief because this claim is moot insofar as Ramadan

25  2013 is concerned, as defendants are no longer enforcing the

26  alleged policy during Ramadan 2012 of serving breakfast to

27  Muslim practitioners at 5:00 a.m.  Thus, because there is no

28  evidence that plaintiff is likely to suffer future

irreparable harm during this Ramadan with respect to the time
when breakfast is served, he is not entitled to preliminary
injunctive relief as to that claim.  See Villegas v.
Schulteis, 2010 WL 3341888, at *3 (E.D.Cal. Aug. 25, 2010)
(declining to issue a preliminary injunction because "[t]he
purpose of [such relief] is to prevent future irreparable
harm, not to remedy past harm[,] [and] [the] Plaintiff . . .
has failed to identify any specific threat of future
irreparable harm).

Count II of the SAC alleges that plaintiff has been
subjected to cruel and unusual punishment in violation of the
Eighth Amendment and denied his Fourteenth Amendment rights
to due process and equal protection.  The basis for this
count is that during Ramadan 2012, the defendants, among
other things, knowingly provided plaintiff with "a
nutritionally inadequate diet[,]" by providing him with only
two meal portions a day instead of three.  SAC (Doc. 17) at
8:3-4, ¶ 3.  Prior to Ramadan 2013, however, on June 21,
2013, Muslim practitioners  were advised that along with a
"'mega sack' for breakfast[,]" they "would 'be given a lunch
sack for dinner," Monday through Friday.  Maloney Decl'n
(Doc. 16) at 4:15-17.  On Saturdays and Sundays, Muslim
practitioners would receive a hot meal for dinner, as well as
the "'mega sack' . . . breakfast."  Id. at 4:19-20.  Despite
that change, the plaintiff claims he is "still be[ing]
deprived" of adequate nutrition during Ramadan because he and
other Muslim practitioners are "only receiv[ing] . . . 8 hot

1  meals in 30 days, while receiving 54[7] cold meals in a bag
2  which are void of any fruits or vegitables [sic]." Id. at
3  4:21-25 (footnote added).

4      Count III of the SAC alleges a Religious Land Use and
5  Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000-cc,
6  violation against defendants Ryan and Linderman.  This count,
7  too, is premised upon the alleged ADC policy of serving
8  breakfast after dawn during Ramadan 2012.  Plaintiff Maloney
9  alleges that that supposed policy "effectively rendered the
10 religious exercise of Sahur impracticable" because he had to
11 choose "between ad[e]quate nutrition and observance of the
12 tenets of his Faith." Id. at 12:5-7.  For present purposes,
13 however, the plaintiff has shifted his focus away from that
14 nutrition argument.  Instead, he asserts that the
15 "[d]efendants are still not allowing for the obligatory
16 religious exercise of Sahur, because allegedly they are not
17 allowing him to "begin[] [his] Fast with a congregational
18 prayer[,]"  Maloney Decl'n (Doc. 16) at 5:5, ¶ 9, which he
19 maintains is an "integral aspect[] of Sahur[.]" Reply (Doc.
20 24) at 8:16; see also Mot. (Doc. 16) at 10:26-11:1 ("Muslim
21 practitioner[]s should be given the opp[o]rtunity to begin
22 the day['s] Fast with the group prayer, in accordance with
23 the religious exercise of Sahur[.]")

24
25
26

_____

27     [7]    By the court's calculations, under this scenario the plaintiff
28 actually would be receiving 8 hot meals and 52 cold meals during the 30 day period of Ramadan.

***Discussion***

***Preliminary Injunction***

### *I.  Governing Legal Standard*

A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." <u>Lopez v. Brewer</u>, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (per curiam) (citation omitted)) (emphasis added by <u>Mazurek</u> Court); <u>see also</u> <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (citation omitted) ("A preliminary injunction is an extraordinary remedy never awarded as a matter of right.") A plaintiff seeking a preliminary injunction must show:

> [1] that he is likely to succeed on the merits,
> [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,
> [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.

<u>Shell Offshore, Inc. v. Greenpeace, Inc.</u>, 709 F.3d 1281, 1289 (9th Cir. March 12, 2013) (quoting <u>Winter</u>, 555 U.S. at 20, 129 S.Ct. 365), <u>rehearing en banc denied</u>, ––– F.3d ––––, 2013 WL 3456673 (9th Cir. July 10, 2013).  "But if a plaintiff can only show that there are 'serious questions going to the merits' — a lesser showing than likelihood of success on the merits — then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two <u>Winter</u> factors are satisfied." <u>Id.</u> at 1291 (quoting <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d

1127, 1135 (9th Cir. 2011) (emphasis added by <u>Shell Offshore</u>
Court).  Under this serious questions variant of the <u>Winter</u>
test, "[t]he elements . . . must be balanced, so that a
stronger showing of one element may offset a weaker showing
of another." <u>Lopez</u>, 680 F.3d at 1072.  Regardless of which
standard applies, the movant "has the burden of proof on each
element of the test." <u>See</u> <u>Nance v. Miser</u>, 2012 WL 6674404,
at *1 (D.Ariz. Dec. 20, 2012) (citing <u>Environmental Council</u>
<u>of Sacramento v. Slater</u>, 184 F.Supp.2d 1016, 1027 (E.D.Cal.
2000), citing in turn, <u>Los Angeles Memorial Coliseum Comm'n</u>
<u>v. National Football League</u>, 634 F.2d 1197, 1203 (9th Cir.
1980)).

Likewise, "[r]egardless of which test is applied, there
is a heightened burden where a plaintiff seeks a mandatory
preliminary injunction" as distinguished from a prohibitory
injunction. <u>See</u> <u>White v. Linderman</u>, 2012 WL 5040850, at *2
(D.Ariz. Oct. 18, 2012). "[M]andatory preliminary relief is
subject to heightened scrutiny and should not be issued
unless the facts and law clearly favor the moving party."
<u>Dahl v. HEM Pharmaceuticals Corp.</u>, 7 F.3d 1399, 1403 (9th Cir.
1993) (internal quotation marks and citation omitted).  Thus,
to determine whether there is a heightened burden in the
present case, the court must consider whether plaintiff
Maloney is seeking prohibitory or mandatory injunctive
relief.

An injunction which "'prohibits a party from taking
action and preserves the status quo pending a determination
of the action on the merits[]'" is prohibitory. <u>Park Vill.</u>

1  Apartment Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d
2  1150, 1159 (9th Cir. 2011) (quoting Marlyn Nutraceuticals,
3  Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 878 (9th Cir.
4  2009) (alteration and internal quotation marks omitted)).
5  "The status quo means 'the last, uncontested status which
6  preceded the pending controversy.'" N.D. ex rel. Parents
7  Acting as Guardians Ad Litem v. Haw. Dept' of Educ., 600 F.3d
8  1104, 1112 n. 6 (9th Cir. 2010) (quoting Marlyn
9  Nutraceuticals, 571 F.3d at 879 (citation omitted)).  In
10 contrast, "[a] mandatory injunction orders a responsible
11 party to take action," and therefore "goes well beyond simply
12 maintaining the status quo[.]" Marlyn Nutraceuticals, 571
13 F.3d at 879 (internal quotation marks and citation omitted).
14 As such, mandatory injunctions are "'particularly
15 disfavored.'" N.D., 600 F.3d at 1112 n. 6 (quoting Stanley v.
16 Univ. of S. California, 13 F.3d 1313, 1320 (9th Cir. 1994)
17 (citations omitted)).

18     Plaintiff Maloney is seeking an injunction requiring the
19 defendants to provide him with two hot meals daily, to
20 include fruits and vegetables, and allowing him to begin the
21 day's fast with group prayer during Ramadan 2013.  Granting
22 the requested relief as to the provision of meals certainly
23 would change the status quo because presently, according to
24 plaintiff, over the course of Ramadan 2013 Muslim inmates
25 will receive a total of "only 8 hot meals[.]"[8]  Maloney Decl'n
26 (Doc. 16) at 4:21, ¶ 6.  Likewise granting the requested

27 _____

28    [8]    Presumably this is accurate given that defendants do not dispute
   or in any way refute this statement.

1   relief as to group prayer, based upon the record as presently
2   constituted, also would change the status quo in that the
3   court would be ordering the defendants "to take action, . . .
4   go[ing] well beyond simply maintaining the status quo[.]" See
5   Marlyn Nutraceuticals, 571 F.3d at 879 (internal quotation
6   marks and citation omitted).  Consequently, because plaintiff
7   Maloney is seeking a disfavored mandatory injunction, his
8   motion "is subject to heightened scrutiny and should not be
9   issued unless the law and facts clearly favor [him]." See
10  Dahl, 7 F.3d at 1403(emphasis added).

11      Additionally, the Prison Litigation Reform Act imposes
12  requirements on prisoner litigants, such as plaintiff
13  Maloney, who are seeking preliminary injunctive relief
14  against prison officials. "Preliminary injunctive relief must
15  be narrowly drawn, extend no further than necessary to
16  correct the harm the court finds requires preliminary relief,
17  and be the least intrusive means necessary to correct that
18  harm." 18 U.S.C. § 3626(a)(2). "Thus, § 3626(a)(2) limits the
19  courts power to grant preliminary injunctive relief to
20  inmates; 'no longer may courts grant or approve relief that
21  binds prison administrators to do more than the
22  constitutional minimum.'" Nance, 2012 WL 6674404, at *1
23  (quoting Gilmore v. People of the State of Cal., 220 F.3d
24  987, 999 (9th Cir. 2000)).

25      Keeping these principles firmly in mind, the court will
26  consider whether plaintiff Maloney has met his burden of
27  proof as to each of the four preliminary injunction factors.
28  . . .

1  *II.  Likelihood of Success on the Merits/Serious Questions*
2  *Going to the Merits*

3      *A.  Eighth Amendment*

4      "The Eighth Amendment's prohibition against cruel and
5  unusual punishment protects prisoners not only from inhumane
6  methods of punishment but also from inhumane conditions of
7  confinement."  <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th
8  Cir. 2006) (citing, *inter alia*, <u>Farmer v. Brennan</u>, 511 U.S.
9  825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).  As a
10  result, "prison officials may violate an inmate's Eighth
11  Amendment rights when they deprive him of 'a single
12  identifiable human need such as food, warmth, or exercise.'"
13  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1151 (9th Cir. 2010) (quoting
14  <u>Wilson v. Seiter</u>, 501 U.S. 294, 304, 111 S.Ct. 2321, 115
15  L.Ed.2d 271 (1991)).  "[B]ut[,] not every injury that a
16  prisoner sustains while in prison represents a constitutional
17  violation."  <u>Norwood v. Cate</u>, 2013 WL 1127604, at *4
18  (E.D.Cal. March 18, 2013) (citing <u>Morgan v. Morgensen</u>, 465
19  F.3d 1041, 1045 (9th Cir. 2006)), <u>adopted</u>, 2013 WL 1876142
20  (E.D.Cal. May 3, 2013).

21      "A prisoner's claim does not rise to the level of an
22  Eighth Amendment violation unless (1) 'the prison official
23  deprived the prisoner of the 'minimal civilized measure of
24  life's necessities,'' and (2) ''the prison official 'acted
25  with deliberate indifference in doing so.''"  <u>Norwood</u>, 2013 WL
26  1127604, at *20 (quoting <u>Toguchi v. Chung</u>, 391 F.3d 1051,
27  1057 (9th Cir. 2004) (quoting, in turn, <u>Hallett v. Morgan</u>, 296
28  F.3d 732, 744 (9th Cir. 2002)).  Thus, an inmate seeking to

prove an Eighth Amendment violation must make both an
objective and a subjective showing.  Objectively, an inmate
must show "that the deprivation was 'sufficiently serious' to
form the basis for an Eighth Amendment violation."  <u>Johnson
v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000)) (quoting <u>Wilson</u>,
501 U.S. at 298, 111 S.Ct. 2321), *abrogated on other grounds
by* <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d
798 (2007).  Subjectively, an inmate must also show "'''that
the deprivation occurred with deliberate indifference to the
inmate's health or safety.'''"  <u>Thomas</u>, 611 F.3d at 1150
(quoting <u>Foster v. Runnels</u>, 554 F.3d 807, 812 (9th Cir. 2009)
(quoting in turn <u>Farmer</u>, 511 U.S. at  834, 114 S.Ct. 1970).
Plaintiff Maloney has shown neither.

### *1.  Objective Prong*

"Adequate food is a basic human need protected by the
Eighth Amendment."  <u>Keenan v. Hall</u>, 83 F.3d 1083, 1091 (9th
Cir. 1996) (citation omitted).  The Eighth Amendment thus
obligates prison officials "to provide inmates with
nutritionally adequate meals on a regular basis."   <u>Foster</u>,
554 F.3d at 810.  Prison food must be "adequate to maintain
health."  <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1456 (9th Cir.
1993).  Here, despite the plaintiff's contrary protestations,
the defendants have met their Eighth Amendment obligation
with respect to the meals being served to plaintiff Maloney
during Ramadan 2013; and the plaintiff has failed to show
otherwise.

During this Ramadan, it is undisputed that plaintiff
Maloney is daily being provided with a sack breakfast and a

sack dinner.  See Daniels Decl'n (Doc. 22-1), at 6:5-7, ¶ 4;
see also Maloney Decl'n (Doc. 16) at 4:11-20, ¶ 5.  Yet,
plaintiff declares that he is "still be[ing] deprived of
adequate nutrition" because the sack meals are "void of
fruits and vegitables [sic][,]" and he is receiving only two
hot meals per week.  Id. at 4:21-25.  In his reply, plaintiff
acknowledges that during their weekend dinners, vegetables
are available to Muslim practitioners, but that "fruits and
vegitables [sic] are nowhere to be found during the week[.]"
Reply (Doc. 24) at 5:16-18.  Neither of these "deprivations"
are "sufficiently serious" to satisfy the objective prong of
an Eighth Amendment violation, however.  See Johnson, 217
F.3d at 731 (internal quotation marks and citation omitted).

    First of all, "[p]laintiff has no Eighth Amendment right
to meals of his choice."  Powers v. Washington Department of
Corrections, 2013 WL 1755790, at *14  (W.D.Wash. March 29,
2013), adopted by 2013 WL 175787 (W.D.Wash. April 24, 2013).
Nor, as plaintiff suggests in his reply, does he have a
constitutional right to "well-balanced meal[s]" comprised "of
the five basic food groups."  Reply (Doc. 24) at 5:15-16.
Rather, prison food simply "must be 'adequate to maintain
health.'"  Keenan, 83 F.3d at 1091 (quoting LeMaire, 12 F.3d
at 1456).  And in fact, the plaintiff's cited authority in his
reply adopts that same standard.  See Smith v. Sullivan, 553
F.2d 373, 380 (5th Cir. 1977) ("A well-balanced meal,
containing sufficient nutritional value to preserve health, is
all that is required.")  ADC's 2013 Ramadan meals easily meet
that standard, as defendants have shown, in that the

- 13 -

plaintiff's daily caloric and nutritional needs are being met. Furthermore, nothing in the record even suggests that the Ramadan 2013 meals are not sufficient to maintain plaintiff Maloney's health.

Angelo Daniels, ADC's Deputy Warden of Security Operations, is responsible for, among other things, "oversight" of inmate meals, including "accommodation of the religious standards in place for the specific faith to which inmates in ADC's custody belong." Declaration of Angelo Daniels (July 19, 2013) (Doc. 22-1) at 5:26–6:2, ¶ 3. According to Mr. Daniels, "this year, ADC's contractor for inmate food services[] . . . adjusted [the Ramadan] meals through the oversight of a dietician." Id. at 6:3-5, ¶ 4. "This adjustment involves an increase to the caloric value of both the breakfast and dinner sack meals provided to Muslim inmates participating in Ramadan." Id. at 6:5-7, ¶ 4. This "increase compensates for the lack of a mid-day lunch meal, in compliance with Ramadan's requirements[,]" and means that "[i]n total, the calories and nutritional value of the two Ramadan meals per day is the equivalent of three non-Ramadan meals served to other inmates." Id. at 6:8-10, ¶ 4.

In addition to this caloric increase, a registered dietician employed by ADC's contractor for inmate food services analyzed ADC's Ramadan 2013 menu, "for nutrition adequacy . . . using the SQL Food Processor Analysis program from the ESHA Corporation of Salem, Oregon." Resp., exh. 3 thereto (Doc. 22-1) at 8. After conducting that analysis, ADC's 2013 Ramadan menu was found to be in compliance with the

1    contractual nutrition standards "(2900 calories +/-200)[,]"

2    and to "meet or exceed the recommended nutrient amounts as

3    specified by Recommended Dietary Allowance from the National

4    Academy of Science[.]" Id.

5        Additionally, ADC's Inmate Datasearch indicates that

6    plaintiff Maloney's date of birth is March 10, 1978.[9]  As a 35

7    year old male, the federal government recommends 2,400

8    calories daily for sedentary males; 2,600 calories daily for

9    moderately active males; and 3,000 calories daily for active

10   males. Resp., exh. 4 thereto (Doc. 22-1) at 10.[10]  ADC's 2013

11   Ramadan menu comports with the federal government's

12   recommended daily caloric intake for a 35 year old male like

13   the plaintiff.

14       Plaintiff Maloney offers no evidence to rebut the

15   foregoing.  For example, although he complains of "continued

16   physical/mental pain and suffering[,]" he has not come forth

17   with any medical evidence to support that vague assertion.

18   ────────────────

19       [9]    The court takes judicial notice of this fact as it "is not
     subject to reasonable dispute because it . . . can be accurately and
20   readily determined from sources whose accuracy cannot reasonably be
     questioned[,]"  i.e., the Arizona Department of Corrections website at
21   http://www.azcorrections./gov/Inmate-DataSearch/Index (last visited July
     25, 2013).  See Fed.R.Evid. 201(b)(2).

22       [10]    The court takes judicial notice of these daily caloric intakes
     because these facts "can be accurately and readily determined from [a]
23   source[] whose accuracy cannot reasonably be questioned[,]" i.e., a federal
     government report. See Fed.R.Evid. 201(b)(2). More specifically, these
24   estimated calorie needs per day by age, gender, and physical activity level
     are found in an appendix to the "Dietary Guidelines for Americans, 2010,"
25   released by the United States Department of Agriculture and the United
     States    Department    of    Health    and    Human    Services.
26   http:/www.cnpp.usda.gov/Publications/Dietary Guidelines/2010 (last visited
     July 31, 2013).  Furthermore, as an "official publication" of "a public
27   authority[,]" this exhibit is self-authenticating pursuant to Fed.R.Evid.
     902(5), and falls within the public records exception to the hearsay rule.
28   See Fed.R.Evid. 803(8).

See Maloney Decl'n (Doc. 16) at 5:1.  He also fails to explain how those vague complaints resulted from the exclusion of fruits and vegetables from his diet during the week.   Nor has he attempted to demonstrate that the provided food is not adequate to maintain his health; and he would be hard pressed to make such a showing given defendants' proof.  "At best, Plaintiff's allegations simply show that, during Ramadan, he [is] not receiv[ing] in his pre-sunrise and post-sunset meals certain foods he prefers to eat."  See Muhammad v. Arizona Dep't of Corrections, 2013 WL 3864253, at *6 (D.Ariz. July 25, 2013).  These alleged deprivations are not, however, "sufficiently serious to form the basis for an Eighth Amendment violation."  See Johnson, 217 F.3d at 731 (internal quotation marks and citation omitted).

        Just as plaintiff Maloney has no constitutional right to food of his choice, he has no constitutional right to hot meals.  See LeMaire, 12 F.3d at 1456 (emphasis added) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); see also Brown-El v. Delo, 969 F.2d 644, 649 (8th Cir. 1992) (citation omitted) (inmate plaintiff's "claim that his constitutional rights were violated when he was served cold food is frivolous[]"); Smith v. Washington Dep't of Corrections, 2013 WL 1499084, at *6 (W.D.Wash. March 6, 2013) ("Nor does the prison official's decision to provide box meals instead of a hot meal for the one season of Ramadan rise to the threshold level of an Eighth Amendment violation."), adopted, 2013 WL 1499064 (W.D.Wash.

1  April 11, 2013); and <u>Lewis v. Corcoran State Prison Food</u>

2  <u>Services Dep't</u>, 2011 WL 3438419, at *2 (E.D.Cal. Aug. 4, 2011)

3  (citations omitted) ("Plaintiff's claim regarding the prison

4  serving room temperature food does not rise to the level of

5  constitutional proportions and, thus, fails to state a

6  claim.")

7       Simply put, ADC's Ramadan 2013 menu provides plaintiff

8  Maloney with "nutritionally adequate meals on a regular

9  basis[,]" <u>Foster</u>, 554 F.3d at 810, which are "adequate to

10 maintain [his] health." <u>See</u> <u>LeMaire</u>, 12 F.3d at 1456.  The

11 Eighth Amendment requires nothing more.  Consequently,

12 plaintiff Maloney has not established, as he must, the

13 objective prong of an Eighth Amendment violation – either

14 with respect to the lack of fruits and vegetables in the

15 Ramadan 2013 meals or because he is being provided with only

16 eight hot meals during this time.[11]  Clearly, then, he cannot

17

18       [11]   In his reply, for the first time, the plaintiff contends
   that the breakfast sacks provided during Ramadan 2013 are not nutritionally
19 adequate because they contain two items – "*processed* lunch meat and
   *sometimes* milk[,]" which he implies could spoil due to lack of "proper
20 refrigeration[] for approximately ten . . . hours before consuming.
   Reply (Doc. 24) at 6:11-16 (emphasis added).  Supposedly, "[by] this time,
21 the meat in the sack and/or the  milk are unable to be consumed as they
   expose Muslim practitioners[]" to unspecified "immediate danger."  <u>Id.</u> at
22 6:16-18.
        At the outset, the court is compelled to comment that it stretches the
23 imagination to suggest or imply, as does the plaintiff, that under the
   circumstances just described "processed lunch meat" would become inedible.
24 In any event, this belated assertion does not alter the court's conclusion
   that on this record plaintiff Maloney has not shown the "threshold
25 deprivation necessary to form the basis of an Eighth Amendment violation."
   <u>See</u> <u>LeMaire</u>, 12 F.3d at *1456.
        Plaintiff Maloney's preliminary injunction motion includes a detailed
26 recitation of the contents of the sack breakfast which he received on the
   first day of Ramadan this year.  That breakfast contained the following:
27 "(6) slices of wheat bread, (1) 3/4 oz. bag of tortilla chips, (1) slice of
   T-ham, (1) small bag of turkey, (4) slices of cheese, (1) hard boiled egg,
28 (1) cereal bar, (2) tea bags, (1) coffee pack, [and] (2) packets of salad

1  show a likelihood of success on the merits, or serious
2  questions going to the merits, as to this aspect of his Eighth
3  Amendment violation.

4          **_2.  Subjective Prong_**

5          Having found that plaintiff Maloney did not establish the
6  objective component of his Eighth Amendment claim, "the court
7  need not inquire as to the existence of the other[,]"
8  subjective component.  <u>See</u> <u>Powers</u>, 2013 WL 1755790, at *11
9  (citing <u>Helling v. McKinney</u>, 509 U.S. 25, 35, 113 S.Ct. 2475,
10 125 L.Ed.2d 22 (1993)).  Nonetheless, for the sake of
11 completeness, the court will proceed to the second prong  –
12 deliberate indifference.

13         "'Deliberate indifference'" has both subjective and
14 objective components."  <u>Labatad v. Corrections Corp. of</u>
15 <u>America</u>, 714 F.3d 1155, 1160 (9th Cir. 2013).  "A prison
16 official must 'be aware of facts from which the inference
17 could be drawn that a substantial risk of serious harm exists,
18 and . . . must also draw the inference.  <u>Id.</u> (quoting <u>Farmer</u>,
19 511 U.S. at 837, 114 S.Ct. 1970).  "Liability may follow only
20 if a prison official 'knows that inmates face a substantial
21 risk of serious harm and disregards that risk by failing to
22 take reasonable measures to abate it."  <u>Id.</u> (quoting <u>Farmer</u>,
23 511 U.S. at 847, 114 S.Ct. 1970).

24         The record here is completely void of any evidence of

25 _____

26 dressing."  Mot. (Doc. 16) at 5:15-18.  Even if on the occasion when milk
   is included in these breakfast sacks for some reason it could not be
27 consumed, the court fails to see how on this record that would establish
   the nutritional inadequacy of the Ramadan sack breakfasts.  Consequently,
28 this belated claim cannot salvage the plaintiff's Eighth Amendment claim.

deliberate indifference  – subjective or objective.  That omission is understandable given, as the record demonstrates, that during Ramadan 2013, plaintiff Maloney is being provided with nutritionally adequate meals, which are adequate to maintain his health. Thus, even if the plaintiff had been able to establish (which he has not) that the Ramadan 2013 meals denied him "the minimal civilized measure of life's necessities," LeMaire, 12 F.3d at 1456 (internal quotation marks omitted), he has not come forth with any evidence whatsoever to show that defendants acted with deliberate indifference. Accordingly, the plaintiff also has failed to establish the subjective prong of an Eighth Amendment violation.

In sum, plaintiff has not shown that he is likely to succeed on the merits, or that there are serious questions going to the merits, as to either element of his claimed Eighth Amendment violation.

### B.   Fourteenth Amendment

Plaintiff Maloney's reliance upon the Equal Protection Clause of the Fourteenth Amendment is similarly unavailing. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).  "To state a claim . . . for a violation of the Equal Protection Claus . . . a plaintiff must show that the defendants acted with an intent or purpose to discriminate against him based on his membership in a protected class."  Furnace v. Sullivan, 705 F.3d 1021, 1030

1   (9th Cir. 2013) (quotation marks and citations omitted).

2   "Prisoners are protected by the Equal Protection Clause from

3   intentional discrimination on the basis of their religion."

4   <u>Davis v. Flores</u>, 2010 WL 2673458, at *13 (E.D.Cal. July 2,

5   2010) (citing, *inter alia*, <u>Freeman v. Arpaio</u>, 125 F.3d 732,

6   737 (9th Cir. 1997)).

7       Plaintiff Maloney contends that as a Muslim practitioner

8   he is "not being treated equal[]" to other inmates with

9   respect to his meals during Ramadan.  Maloney Decl'n (Doc. 16)

10  at 5:9-10, ¶ 10.  Plaintiff claims that he is being "fed less

11  than those housed in Level 5, max[imum] custody," who receive

12  "Mega Sack" meals for breakfast and lunch, Monday through

13  Sunday, and hot meals for dinners, Monday through Sunday.  <u>Id.</u>

14  at 5:10-13, ¶ 10; and  exh. II thereto (Doc. 16) at 21.

15      Admittedly the plaintiff is receiving only two meals per

16  day during Ramadan.  But, significantly, as explained earlier,

17  "the calories and nutritional value of th[os]e two . . . meals

18  . . . [are] the equivalent of three non-Ramadan meals served

19  to other inmates."  Daniels Decl'n (Doc. 22-1) at 6:5-10, ¶ 4.

20  This is fatal to plaintiff's Equal Protection claim. Moreover,

21  the record is devoid of any facts which suggest defendants

22  intentionally discriminated against him by treating him

23  differently than other similarly situated inmates.  Thus, as

24  with this Eighth Amendment claim, plaintiff has not met his

25  burden of showing either a likelihood of success on the

26  merits, or serious questions going to the merits, with respect

27  to his Fourteenth Amendment Equal Protection Claim.

28  . . .

1      ### C.   RLUIPA

2          In his supporting declaration, the plaintiff broadly

3   seeks a preliminary injunction, "requiring defendants to allow

4   for the religious exercise of Sahur."  Maloney Decl'n (Doc.

5   16) at 6:7-8, ¶ 18.  As his motion makes clear, however, the

6   relief which plaintiff Maloney is seeking is actually quite

7   specific.  He is seeking injunctive relief requiring the

8   defendants to allow for congregational or group prayer prior

9   to the beginning of the day's fast during Ramadan 2013.  See

10  Mot. (Doc. 16) 10:25-11:1.

11         Plaintiff's reframing of his RLUIPA claim since the

12  filing of his SAC is understandable.  As earlier noted, the

13  ADC is providing Muslim practitioners with their pre-dawn

14  meals in the evening, "so inmates can eat at whatever time

15  they choose in the morning."  Linderman Decl'n (Doc. 22-1) at

16  3:12-13, ¶ 5.  As a result, plaintiff Maloney is not, as he

17  allegedly was during Ramadan 2012, being deprived of his pre-

18  dawn meal, *i.e.* Sahur.  Therefore, this aspect of plaintiff's

19  RLUIPA claim is moot, at least as it pertains to Ramadan 2013.

20  In turn, at this point, the alleged 2012 Ramadan policy cannot

21  be the basis for any injunctive relief.

22         Plaintiff's RLUIPA claim cannot form the basis for a

23  preliminary injunction for another reason.  "Any injunctive

24  relief must be tailored to the *specific harm being complained*

25  *of*[.]" Rhoades v. Reinke, 671 F.3d 856 860 (9th Cir. 2011)

26  (citations omitted) (emphasis added).  Indeed, it would be an

27  abuse of this court's discretion to issue an overbroad

28  injunction.  See Rodriquez v. Robbins, 715 F.3d 1127, 1133 (9th

Cir. 2013) (citation omitted).

    In the present case, the nature of the injunction which plaintiff Maloney is seeking reaches beyond the scope of the SAC.   That is so because the sought injunctive relief, being allowed to engage in congregational prayer prior to the beginning of the day's fast, is not the specific harm of which he complains in his SAC.   Rather, as previously explained, the harm, as the SAC alleges, is inadequate nutrition as a result of ADC's policy of not providing Muslim practitioners with breakfast prior to dawn during Ramadan 2012.   See SAC (Doc. 17) at 11-12.   Accordingly, the court finds that there is not a likelihood of success on the merits, nor are there serious questions going to the merits, of plaintiff's RLUIPA claim as he frames it for purposes of this motion.   See Hylton v. Anytime Towing, 2012 WL 3563874, at *1 (S.D.Cal. Aug. 17, 2012) (denying injunction motion "because the relief sought is beyond the scope of the operative complaint" in that the injunction and the first amended complaint were "based on entirely different facts and circumstances"); see also Quiksilver, Inc. v. Kymsta Corp., 466 F.3d 749, 754 n. 4 (9th Cir. 2006) (district court's inclusion in an injunction of prohibition going "beyond the claims asserted in the complaint" was "in contravention of well-settled Ninth Circuit authority holding that a court may not, without the consent of all persons affected, enter a judgment which goes beyond the claim asserted in the pleadings[]") (internal quotation marks and citation omitted).

. . .

*III.  Likelihood of Irreparable Harm*

In general, "a court of equity should not act, . . . , when the moving party . . . will not suffer irreparable injury if denied equitable relief." <u>Younger v. Harris</u>, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).  The burden is on the plaintiff to "establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." <u>Center for Food Safety v. Vilsack</u>, 636 F.3d 1166, 1172 (9th Cir.  2011) (internal quotation marks and citation omitted) (emphasis added by <u>Vilsack</u> Court).  Additionally, where, as here, the moving party is seeking a mandatory injunction, ordinarily such an injunction will not be "granted unless extreme or very serious damage will result[.]" <u>Park Village</u>, 636 F.3d at 1160 (internal quotation marks and citation omitted).

In seeking to demonstrate irreparable harm, plaintiff Maloney contends that in the absence of a preliminary injunction requiring that during Ramadan 2013 he be provided with two hot meals a day,  he "faces a . . . very . . . real[] threat of denial of adequate nutrition . . . i[n] . . . clear violation of" the Eighth Amendment.  Mot. (Doc. 16) at 8:22-26 (citations omitted).  In a similar vein, the plaintiff sweepingly contends that this purported "continuing deprivation of [his] constitutional rights constitutes irreparable harm."  <u>Id.</u> at 9:5-6 (citations omitted).

To be sure, "''the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.''" <u>Rodriguez</u>, 715 F.3d at 1144 (quoting <u>Melendres v. Arpaio</u>, 695 F.3d 990,

1  1002 (9ᵗʰ Cir. 2012) (quoting in turn <u>Elrod v. Burns</u>, 427 U.S.

2  347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).  As already

3  explained though, the plaintiff has not shown a deprivation of

4  his constitutional rights.  Hence, he cannot establish

5  irreparable injury on that basis.

6      Plaintiff fares no better with his bald assertion that he

7  will "suffer irreparable harm in the form of continued

8  physical and mental pain and suffering[]" if, during Ramadan

9  2013, he is not provided two hot meals a day.  Maloney Decl'n

10  (Doc. 16) at 4:26-5:1.  This wholly unsubstantiated and vague

11  claim does not show the resultant extreme or very serious

12  damage which usually must be shown before a mandatory

13  injunction will issue.  <u>See</u> <u>Park Village</u>, 636 F.3d at 1160.

14      Lastly, plaintiff Maloney's motion is completely silent

15  as to how he will sustain irreparable harm in the absence of

16  an injunction requiring ADC to allow for group or

17  congregational prayer as part of Sahur during Ramadan 2013.

18  Plaintiff, therefore, has not meet his burden of showing

19  irreparable harm as to either aspect of his preliminary

20  injunction motion.

21  ***IV.  Balance of Equities***

22      Before addressing this factor, some clarification is

23  necessary.  In arguing that "[t]he balance of equities lies in

24  Defendants' favor, not Plaintiff's[,]" the defendants are

25  assuming that if the court were to issue an injunction, it

26  would require "ADC to provide hot meals to all Muslim inmates

27  throughout the State of Arizona[.]" <u>See</u> Resp. (Doc. 22) at

28  6:24-25; and at 7:2.

1    For two reasons, however, the court would not issue such
2    a broad injunction.  First, the SAC  does not seek class
3    certification, or even suggest that possibility.  While his
4    pending motion does seek "class-wide relief[,]"[12]  Mot. (Doc.
5    16) at 12:19 (emphasis omitted), because the court has not
6    certified a class herein, such a sweeping injunction would be
7    impermissibly overbroad.

8        Second, to the extent plaintiff's motion can be read as
9    seeking class certification pursuant to Fed.R.Civ.P. 23, the
10   court denies such request.  Plaintiff Maloney is not an
11   attorney; he is appearing *pro se* in this action.
12   "Accordingly, although [p]laintiff may appear on his own
13   behalf, he may not appear as an attorney for other persons in
14   a class action."  Chapa v. Arpaio, 2013 WL 474367, at *6
15   (D.Ariz. Feb. 7, 2013) (citing McShane v. United States, 366
16   F.2d 286, 288 (9th Cir. 1966) (nonlawyer had no authority to
17   appear as an attorney for other persons in a purported class
18   action); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir.
19   1975) (plain error to permit an inmate proceeding pro se to
20   represent fellow inmates in a class action)); see also Johns
21   v. County of San Diego, 114 F.3d 874, 876 (9th Cir. 1997)
22   ("While a non-attorney may appear pro se on his own behalf,
23   '[h]e has no authority to appear as an attorney for others
24   than himself.'") (quoting C.E. Pope Equity Trust v. United
25   States, 818 F.2d 696, 697 (9th Cir. 1987)).

26

27       [12]   More specifically, "to provide complete relief to the
28   Plaintiff[,]" he asserts that this court's order should "include all
     [M]uslim practitioners within [ADC][.]" Mot. (Doc. 16) at 12:21-22.

- 25 -

1    Even if the court were to issue a preliminary injunction
2  requiring the defendants to provide only the plaintiff with
3  two hot meals a day during Ramadan 2013, there is a
4  possibility of harm to the defendants in that other inmates,
5  particularly Muslim practitioners, who might perceive that
6  plaintiff Maloney is receiving preferential treatment. More
7  importantly, though, there is no possibility of harm to the
8  plaintiff, and he has not shown otherwise, if he is not
9  provided with two hot meals daily during Ramadan 2013.   That
10  is because his current Ramadan meals are nutritionally
11  adequate and provide him with enough calories to allow the
12  plaintiff to maintain his health.   Therefore, the court finds
13  that the balance of equities factor is neutral, or tips
14  slightly in favor of defendants, but certainly not *sharply* in"
15  plaintiff's favor, as would be required, assuming he had met
16  the lesser standard of serious questions going to the merits
17  (which he has not). See <u>Shell Offshore</u>, 709 F.3d at 1291
18  (internal quotation marks and citation omitted) (emphasis
19  added by <u>Shell Offshore</u> Court).
20  *V.  Public Interest*
21    Plaintiff Maloney asserts that an injunction is in the
22  public interest "because it is always in the public interest
23  for public officials to obey the law, especially the
24  constitution."  Mot. (Doc. 16) at 12:9-11 (citations omitted).
25  Plaintiff is correct: "[I]t is always in the public interest
26  to prevent the violation of a party's constitutional rights."
27  <u>Melendres</u>, 695 F.3d at 1002 (internal quotation marks and
28  citations omitted).  Of course, in this case, as previously

1  discussed, the defendant public officials are obeying the
2  constitution.

3      In any event, the court must take into account that
4  "[t]he public interest inquiry primarily addresses [the]
5  impact on non-parties rather than parties."   Sammartano v.
6  First Judicial Dist. Court, in & for County of Carson City,
7  303 F.3d 959, 974 (9th Cir. 2002). "When the reach of an
8  injunction is narrow, limited only to the parties, and has no
9  impact on non-parties, the public interest will be at most a
10 neutral factor in the analysis rather than one that favor[s]
11 [granting or] denying the preliminary injunction." Stormans,
12 Inc. v. Selecky, 586 F.3d 1109, 1138–39 (9th Cir. 2009)
13 (internal quotation marks and citation omitted).  Here,
14 because the proposed preliminary injunction addresses ADC's
15 2013 Ramadan meals, and it would not impact non-parties, this
16 factor is largely neutral. To the extent that this factor
17 affects the court's analysis, however, it favors the
18 defendants because the court would be requiring a change in
19 the status quo with respect to prison administration.  Thus,
20 as with the other three preliminary injunction factors,
21 plaintiff Maloney has not met his burden on this one either.

22                        ***Conclusion***

23      For the reasons discussed herein, the court finds that
24 plaintiff has not met his heightened burden of showing that he
25 is entitled to "the extraordinary and drastic remedy" of a
26 preliminary injunction because he has not met his burden of
27 proof as to any of the four preliminary injunction factors.
28 See Lopez, 680 F.3d at 1071 (internal quotation marks and

citations omitted). Plaintiff Maloney has not shown that: (1) he is likely to succeed on the merits, or that there are serious questions going to the merits as to his Eighth Amendment, Fourteenth Amendment Equal Protection and RLUIPA claims; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Thus,

**IT IS HEREBY ORDERED** that plaintiff Erik Scott Maloney's "Motion for a Temporary Restraining Order and/or Preliminary Injunction" (Doc. 16) is **DENIED** in all respects.[13]

DATED this 31st day of July, 2013.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record and plaintiff *pro se*

---

[13] This court's holding renders moot plaintiff's argument that he should not be required to post security.